IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FILED
Jun 22, 2016
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN MCCOY,<br><br>    Petitioner,<br><br>  vs.<br><br>STUART SHERMAN, Warden, California Substance Abuse Treatment Facility and State Prison,[1]<br><br>    Respondent. | No. 2:14-cv-01413-JKS<br><br>MEMORANDUM DECISION |

  Alan McCoy, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  McCoy is in the custody of the California Department of Corrections and incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California.  Respondent has answered, and McCoy has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On January 4, 2011, McCoy was charged with forcible rape (count 1); forcible oral copulation (count 2); home burglary (count 3); domestic violence, with a prior conviction in 2007 for the same crime (count 4); assault with a hammer (count 5); assault with a bottle (count 6); and violation of a domestic violence restraining order, with a prior conviction in 2008 for the same violation (count 7).  The information further alleged as to count 3 that another person was

---

  [1] Stuart Sherman, Warden, California Substance Abuse Treatment Facility and State Prison, is substituted for Michael Martel, former Warden, Ironwood State Prison.  FED. R. CIV. P. 25(c).

-1-

present in the residence during the burglary, and as to count 7 that McCoy's conduct involved an act or threat of violence. McCoy pled not guilty to all counts and denied the allegations. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against McCoy:

> Viewed through the lens of [McCoy's] arguments, the focus in our factual account is narrow. Other than give a thumbnail description of the victim's background with [McCoy], we are concerned only with the chronology of the night in question.
> Although never married, the relationship of [McCoy] and the victim dated back to 1993, and produced four children (born in 1995, 1996, 2001, and 2003). There had been many breakups over the years, too many for the victim to distinguish. Their life together was tempestuous, with alcohol-fed domestic violence on [McCoy's] part.
> In 2000 and 2006, the victim sought police intercession. After an incident in 2007 where [McCoy] also attacked their eldest daughter when she sought to intercede on the victim's behalf, the couple never lived together again. When the victim returned after this incident with her children to pick up their belongings, [McCoy] arrived; he struck the victim and damaged the residence and the victim's car. This led to [McCoy's] prior conviction for domestic violence. The victim obtained a restraining order against him in the criminal matter and in a proceeding in family court.
> The victim began to drink heavily at this time. As a result of harassing the victim, [McCoy] was jailed for violating the restraining order in 2008, obtaining early release on his one-year sentence.
> Beginning in late 2009, the victim began communicating with [McCoy] again in connection with his visitations with their youngest child, and by February 2010 they had resumed sexual relations with each other after [McCoy] showed up on her doorstep with nowhere to stay. [McCoy] began to drink again, however, and the situation deteriorated quickly.
> On the night of March 26, 2010, the victim left [McCoy] at the apartment and met with deputies, who escorted her back to her apartment. [McCoy] abruptly opened the door as she attempted to unlock it, causing her to fall forward. [McCoy] was extremely angry, but immediately calmed down on seeing the deputies. In response to the prompting of the deputies, [McCoy] agreed to leave. However, he forgot his backpack. The victim went to a motel for two nights to avoid [McCoy] in the event he came back.
> [McCoy] phoned the victim repeatedly about retrieving his backpack; she was not receptive about seeing him in person. He showed up uninvited at her apartment on the evening of March 30. She testified that [McCoy] entered her apartment through the window after she had called her boyfriend and then passed out on the bed. She had been drinking tequila and citrus soda since the morning, and admitted this could have affected her ability to remember the chronology of events. [McCoy] began to attack her physically almost immediately, saying he was angry that she had summoned the deputies. At some point he broke her cell phone. He then had sexual relations with her against her

will. [McCoy] spent the night with the victim and would not let her leave.  On the following day, he went with her to an appointment, at which point she was able to call for assistance and have him arrested.

The victim did not recall making any calls to 911 on the night of the attack; while she did have a memory of calling 911 from the bathroom, she could not remember the day this happened.  The agency's records, however, showed this was in fact the evening of March 30, when it received three calls from the victim at 9:41, 9:45, and 9:53 p.m., during which she said to the dispatchers that she was in the bathroom.[FN3]  When deputies arrived at 10:02 p.m., she did not appear to be injured, and deputies recalled that she told them (as they spoke with her at the door) that [McCoy] was not there any longer.

> FN3.  During the first call, she made reference to [McCoy] having returned after "they" had come over "last"; she terminated the call when [McCoy] began to pound on the bathroom door.  The second was only a brief call in which she said [McCoy] was going to break down the door.  In the third, she said that she was sure that [McCoy] was gone, and asked for the deputies to call her when they arrived so that she would know it was safe to come out.

At trial, she thought it was evident that [McCoy] was in her apartment before the 911 calls, and believed the 911 calls took place before she passed out on the bed and he entered through the window.  She could not recall the arrival of the deputies.  However, she was sure that she had not been beaten or raped before making the 911 calls.

In a statement to deputies on March 31, the victim said [McCoy] had come over to her apartment after talking to her on the phone.  She also told them she had called for help while [McCoy] was there but he left before deputies arrived; she then made the call to her boyfriend; and [McCoy] later broke into her apartment through the window and attacked her.

*People v. McCoy*, No. C067498, 146 Cal. Rptr. 3d 469, 471-72 (Cal. Ct. App. 2012).

On January 4, 2011, McCoy proceeded to a jury trial.  The jury retired for deliberations on January 11, 2011.  The following day, the jury submitted the following questions:

> If [the victim] let Mr. McCoy in the front door is it still Burglary?  Does it matter how he entered the apartment?  Can it be burglary if he was invited in?

The trial court notified the defense and the prosecution about the question.  After conferring with the attorneys about the matter, the trial court responded to the jury, "The issue is the defendant's specific intent at the time of entry and not the point of entry."  Later that morning, the jury reached its verdict, finding McCoy guilty on all counts and finding all

additional allegations to be true. The trial court subsequently sentenced McCoy to an aggregate imprisonment term of 22 years and 8 months.

Through counsel, McCoy appealed his conviction, arguing that the trial court violated his right to present a defense to the burglary charge by giving an erroneous response to the jury's question and erred by failing to stay pursuant to California Penal Code § 654[2] the 8-month sentence imposed for the violation of the restraining order. The Court of Appeal unanimously affirmed the judgment against McCoy in a partially-published, reasoned opinion issued on August 29, 2012. *McCoy*, 146 Cal. Rptr. 3d at 475. McCoy petitioned the California Supreme Court for review, which was denied without comment on November 28, 2012.

McCoy then filed in the Sacramento County Superior Court a *pro se* petition for habeas relief that alleged that trial counsel was ineffective because he failed to raise an affirmative defense of mistake of fact to the rape and oral copulation charges. On October 2, 2013, the county court rejected the claim as meritless in a reasoned, unpublished opinion. Again proceeding *pro se*, McCoy raised the same ineffective assistance claim in a habeas petition filed in the California Court of Appeal. That petition was summarily denied on January 23, 2014. He then raised the claim to the California Supreme Court in another *pro se* habeas petition, which was denied without comment on April 23, 2014.

McCoy timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on May 27, 2014. *See* 28 U.S.C. § 2244(d)(1)(A).

---

[2] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, McCoy again argues that the trial court erred in its response to the jury's question and that trial counsel was ineffective for failing to adequately defend him against the rape and oral copulation charges.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Here, the only decision on Simmons' collateral review claims was a summary denial by the California Supreme Court on habeas review, which is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.   *Response to Jury Question*

McCoy first argues that his due process rights were violated by the court's response to a jury inquiry during deliberations regarding the burglary charge. The Court of Appeal described the facts underlying this claim as follows:

In closing argument, the prosecutor argued [McCoy] had left after the victim called 911, and entered through the window with the intent at least to inflict domestic violence. Defense counsel pointed out that the photographs taken of the bedroom window on the following day looked as if nothing had been disturbed on the sill. Counsel contended this contradicted the victim's claim that [McCoy] came in through the window uninvited, and that she must have let him in the front door. Counsel further argued [McCoy's] intent at the time of this entry was only to retrieve his backpack (which another photo indicated was next to the door) and not commit any other felony, which meant he was not guilty of burglary. (Defense counsel elided the issue of whether [McCoy] ever left the apartment.) The prosecutor responded that there was an initial entry with the victim's consent, after which [McCoy] "g[ot] nasty" and the victim ran into the bathroom. [McCoy] then concealed himself nearby and observed the deputies arrive, after which he came in through the window; the items on the sill must have been replaced as part of the "amateurish efforts to clean up the apartment before the two of them left in the morning."

After argument and instructions, the jury deliberated a half-hour before breaking for the evening. On the following morning, they deliberated for about an hour before sending a query to the judge, which asked, "If [the victim] let [McCoy] in the front door is it still burglary? Does it matter how he entered the apartment? Can it be burglary if he was invited in?"

The court notified counsel of the jury's inquiry, which led to a string of e-mails between the court and counsel (which we summarize). The prosecutor took the position that the jury should be told that it was the intent at the time of entry and not its manner that was determinative. Defense counsel was concerned about making the jury aware that manner of entry could be circumstantial evidence of [McCoy's] intent. The prosecutor agreed, but asserted that would have been the subject of argument, not instruction, and was not the focus of the inquiry (i.e., the effect of an invitation at the front door). Defense counsel asserted the failure to explain that the point of entry has circumstantial relevance would make it seem as if it did not have any evidentiary value. The trial court proposed giving a narrow answer and awaiting any further inquiries. "At this point they seem to [be inquiring only] whether an invitation into the residence would preclude a burglary from taking place. I intend to tell them that 'The issue is the defendant's specific intent at the time of entry and not the point of entry,'" and would redirect the jury as well to the instructions on the use of circumstantial evidence, the elements of burglary, and the status of burglary as a crime of specific intent. Both counsel acceded to this response. The jury returned its verdicts shortly after it received the court's response (which was a little over an hour after the jury had sent its inquiry).

"To obtain habeas relief following an erroneous response to a jury's request for clarification, a petitioner must show that (1) the response was an incorrect or inaccurate application of state law, (2) constitutional error resulted and (3) the error was not harmless."

-7-

*Richter v. Hickman*, 521 F.3d 1222, 1237 (9th Cir. 2008), *rev'd on other grounds*, 578 F.3d 944 (9th Cir. 2009) (en banc); *see also Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001) (holding that when an appellate court is considering an allegedly erroneous jury instruction, it must consider whether the alleged error amounted to a constitutional error and if so, whether the error was harmless).  Generally, a jury is presumed to have understood a judge's answer to a question and appropriately applied the jury instructions.  *Waddington v. Sarausad*, 129 S.Ct. 823, 834 (2009); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Here, the Court of Appeal rejected McCoy's claim on the merits:

> Turning to the merits, [McCoy] first makes the undisputed point that the manner of entry is circumstantial evidence of the intent at the time of entry.  He then asserts that while the court's response was generally accurate, the statement that "the point of entry" was not "the issue" was the equivalent of "prohibit[ing]" the jury "from considering the relationship between [his] means of entry . . . and his intent at the time of entry" because the response did not affirmatively inform the jury of the purpose for which it could be used.  By analogy, [McCoy] cites to *People v. Baker* (1954) 42 Cal.2d 550, where it was error to have failed to instruct sua sponte that voluntary intoxication is relevant to the existence of purpose, motive, or intent, given there was ample evidence of this circumstance at trial;[FN4] prejudice from this failure to instruct was "enhanced" (*Baker*, at p. 573) by the correct but incomplete statement that under the law no act is "less criminal" by virtue of voluntary intoxication (*ibid.*; *see also id.* at pp. 571-573, 575-576). The court believed this "had the same effect" as telling the jury "that [the] defendant's drugged condition could not influence their decision on any issue submitted to them." (*Id.* at p. 573.)  The People do not reply directly to this argument.
>
>> FN4.  [McCoy] concedes a trial court does not have any duty to instruct sua sponte on the relevance of the manner of entry to the necessary intent for burglary.
>
> Though the jury did inquire if it mattered "how [McCoy] entered the apartment," we agree with the trial court that it is reasonable to interpret the questions as a whole as focusing on the legal effect of an invitation at the front door to enter (the subject of invitation not having any relevance to the entry though the window to which the victim attested).  The trial court thus properly directed the jury to consider [McCoy's] specific intent at that point (referencing the instructions on the use of direct or circumstantial evidence).  We are not here concerned with a partial truth in an instruction that flatly asserts a circumstance does not make an act any less criminal (which could be construed

-8-

only as stating the circumstance is not relevant to guilt). We have instead a response to a jury inquiry, i.e., [McCoy's] intent. This did not in any way declare that the circumstances of entry (door or window) were not relevant to the determination of intent. As we do not find any error in the court's response, we reject [McCoy's] argument.

The Court of Appeal's interpretation of the jury's question, and resulting denial of McCoy's claim, is both reasonable and fully supported by the record. The Supreme Court's decision in *Bollenbach v. United States*, 326 U.S. 607 (1946), which McCoy cites in support of his claim, does not compel a contrary result. In *Bollenbach*, the judge gave a cursory supplemental instruction in response to a jury instruction which was described on review as "mistaken" and "simply wrong." 326 U.S. at 611, 613. But that case was decided on its specific facts which are not found in this case: the question from the jury had "clearly indicated that the[y] were confused," the judge's response was cursory and inaccurate, and included "a plain hint from the judge that a verdict ought to be forthcoming. *Id.* at 612-13. The jury returned with a guilty verdict only five minutes later. *Id.* at 610. Here, however, the jury expressed limited confusion regarding the burglary charge, and, as the Court of Appeal explained, the trial court's response was not inaccurate. Likewise, the judge did not suggest that a verdict should be forthcoming. Accordingly, McCoy is not entitled to relief on this claim.

B.      *Ineffective Assistance of Trial Counsel*

McCoy additionally contends that trial counsel failed to adequately defend him against the rape and oral copulation charges. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

-9-

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[3] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, McCoy must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See*

---

[3] *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

McCoy argues that his trial counsel was ineffective because he failed to introduce evidence that the victim testified at a preliminary hearing that she and McCoy had, on previous occasions, engaged in "make-up sex" after a fight or argument. McCoy contends that counsel should have used this testimony to seek an instruction on the defense of mistake of fact as to a reasonable belief in consent. McCoy raised this claim in his state habeas petitions. The last reasoned decision was that of the superior court, which considered and rejected the claim as follows:

> Petitioner challenges the judgment in the Sacramento County Superior Court Case No. 10F02820. Specifically, he claims ineffective assistance of trial counsel in failing to prepare and present an affirmative defense of mistake of fact to the charges of rape and oral copulation, or to ask the court to give an instruction on mistake of fact. Petitioner admits that he did not himself testify, but claims that the record shows substantial evidence for trial counsel to raise. He quotes from the cross-examination of the victim at the preliminary hearing, in which the victim was asked if she was familiar with the term "make-up sex," that she had that experience with petitioner during the twelve years they were together, and that the two of them had arguments in the past and had been intimate as a way to make each other feel better (RT-57), and claims that trial counsel did not but should have introduced this testimony at trial to show petitioner's state of mind during the commission of the crimes. He also quotes additional testimony from the victim at the preliminary hearing about "make-up sex," that during the commission of the charged offenses it was different because the victim did not think she would make it to the next day, was afraid and just laid there and let it happen, and that petitioner had said he was going to make her feel better (RT-66—RT-67). Petitioner also claims that at trial, the victim's statement was admitted that before lying on the bed petitioner had hit her in the knees with a hammer, that he then apologized, and then he told her he was going to make her feel better and had intercourse with her. Petitioner admits that the trial court did instruct with CALCRIM No. 1194,[4] that the jury had heard evidence that petitioner and

---

[4]   That instruction provides:

You have heard evidence that (<insert name of complaining witness>/Jane Doe/John Doe) had consensual sexual intercourse with the defendant before the act that

-11-

      the victim had had consensual sexual intercourse before the charged act and that the jury could consider this in deciding whether the victim consented to the charged acts or whether petitioner reasonably and in good faith believed that the victim consented to the charged acts; however, petitioner claims that the jury considered this instruction without knowing the "make-up sex" testimony from the preliminary hearing.

      The claim is meritless. Petitioner did not testify as to his state of mind and belief that he was engaging in consensual sexual behavior. "[E]vidence of the victim's prior sexual conduct with a defendant, by itself, is insufficient to require that the jury be instructed [on mistake of fact as to consent], because such conduct has no tendency to prove or disprove the defendant's state of mind at the time of the offense. To warrant this instruction, there must be evidence, whether direct or circumstantial, of the defendant's state of mind at the time the offense was committed. In such a case, the additional evidence that the victim and the defendant previously had engaged in sexual intercourse might properly have a bearing on the reasonableness of the defendant's belief" (*People v. Simmons* (1989) 213 Cal. App. 3d 575, 580-581). Here, there was evidence presented to the jury that petitioner had physically attacked the victim with a hammer just before engaging in sexual relations with her. Had the preliminary hearing testimony of the victim been introduced, the jury would have heard that the victim was afraid and chose to just lie there as petitioner then sexually attacked her. It is not reasonably probable that the outcome of the trial would have been different, had the jury heard the "make-up sex" testimony from the preliminary hearing, as the jury most likely would have rejected any notion that it was reasonable for petitioner to believe that engaging in sexual behavior after physically attacking the victim with a hammer was in any way consensual. The jury was instructed on consent and rejected it; it is not reasonably probable that hearing about "make-up sex" would have made a difference, especially in light of the evidence that petitioner would not let the victim leave after the sex until the following day.

      Petitioner fails to set forth a prima facie showing of ineffective assistance of counsel, and the petition is denied.

McCoy fares no better on federal habeas review. In his Petition, McCoy takes issue with the superior court's interpretation of *People v. Simmons*, 261 Cal. Rptr. 760 (Cal. Ct. App. 1989). In *Simmons*, the Court of Appeal acknowledged that a defendant's testimony is not required for a defendant to establish substantial evidence to warrant a reasonable good faith but

---

      is charged in this case. You may consider this evidence only to help you decide (whether the alleged victim consented to the charged act[s]/ [and] whether the defendant reasonably and in good faith believed that (<insert name of complaining witness>/Jane Doe/John Doe) consented to the charged act[s]). Do not consider this evidence for any other purpose.

mistaken belief in consent. *Id.* at 764. But there, the Court of Appeal stressed that substantial evidence of the defendant's intent was required; indeed, it "conclude[d] that evidence of the victim's prior sexual conduct with a defendant, *by itself*, is insufficient to require that the jury be instructed [as to the defense], because such conduct has no tendency to prove or disprove the defendant's state of mind at the time of the offense." *Id.* at 764-65 (emphasis in original). Here, as in *Simmons*, there was no other evidence of McCoy's intent, and the victim's testimony regarding the offenses was uncontroverted. As the Court of Appeal held in this case, if the jury believed the victim's testimony that she was attacked with a hammer prior to having sex with McCoy, the fact that she had previously consented to sexual relations with McCoy, standing alone, had no tendency to prove that she consented to sexual relations on the night in question. Thus, even if counsel had elicited the specific testimony from the preliminary hearing, there still would have been insufficient evidence to support an instruction on mistaken belief of consent.

Moreover, as the Court of Appeal noted, the jury heard evidence that McCoy and the victim had previously had consensual sexual relations and was instructed that they could consider that evidence in determining whether the victim consented and whether McCoy reasonably and in good faith believed that she consented. Given the circumstances of the night in question, it is not reasonably likely that evidence that McCoy and the victim had at times engaged in "make-up sex" would have led the jury to find McCoy not guilty of the offenses. Accordingly, McCoy is not entitled to relief on his ineffective assistance claim either.

## V. CONCLUSION AND ORDER

McCoy is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 22, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
